UTICA,
Aug. 1824.

Rogers
v.
Coleman.

Debt on bond
to perform co-
venants—issue
and verdict for
plaintiff, but
no assignment
of breaches
nor assessment
of damages by
the jury: the
plaintiff may
afterwards as-
sign breaches
and have his
damages as-
sessed upon a
writ of inqui-
ry, under the
statute, (sess.
36, ch. 56, s 7,
1 R. L. 518.)

ROGERS *against* COLEMAN.

DEBT on bond for the performance of covenants. Plea, *non est factum.* Upon this plea the plaintiff proceeded to trial, and took a verdict for the plaintiff, without having yet assigned breaches, at the *Monroe* Circuit, in *March* last. *April* 22*d,* the plaintiff's attorney served the defendant's attorney with a copy of the assignment of breaches, and with notice of executing a writ of inquiry, for the 4*th* of *May,* before the Sheriff of *Monroe* county, on which day it was accordingly executed.

*A. Samson,* moved to set aside the proceedings as irregular. He said there should have been an assignment of breaches, and an assessment of damages by the jury who tried the cause. He cited *Tuxbury* v. *Miller,* (19 *John. Rep.* 311.)

*S. M. Hopkins,* contra.

*Curia.* The ordinary practice is to assign breaches, and have the damages assessed by the jury who try the cause, yet, where this is omitted, we are clear that the plaintiff is not foreclosed, but may proceed as he has done in this case.

Motion denied.(*a*)

(*a*) Vid. 1 *Saund.* 58, *n.* (1) and the cases there cited, and forms given by Serjeant *Williams.* Also, 2 *Saund,* 187. *a* 187, *b.* n. (2) where this practice of assigning breaches and assessing damages, after verdict, and before judgment, is mentioned and approved of by him. And he says that the form of entering the suggestion may be the same as in case of judgment on demurrer, which he gave in 1 *Saund* 58, *n.* (1). The proceeding in *England* is founded on the 8 & 9 *W.* 3, *c.* 11, of which our statute, (*sess.* 36, *ch.* 56, *s.* 7, 1 *R. L.* 518) is nearly a copy. One difference, however, is, that the writ of inquiry may here run to the Sheriff, to summon a jury before the Circuit Judge, or himself, to inquire, &c. but in *England* it is confined to the Assizes. The form (which is on judgment upon demurrer) given by Serjeant *Williams,* is now well established, having undergone the revision and been approved both by Ld. *Alvanley,* Ch. J. in *Hankin* v. *Broomhead,* (3 *B.* & *P.* 607, 611) and by the House of Lords, on error, in

*Johnes* v. *Johnes*, (3 *Dow's Parl. Cas.* 1 *to* 23) in which the Ld. Chancellor read the form from the record, said it was copied from Mr. *Williams'* note, and iterated the compliment bestowed upon that learned practitioner by Ld. *Alvanley*, in *Hankin* v. *Broomhead*. *Johnes* v. *Johnes* travelled through the Court of Exchequer Chamber, silently, into the House of Lords, where it was argued for the first time, which accounts for some expressions of the Lord Chancellor, in the opinion which he gives in that cause, and which, as it is an able commentary upon the statute, and the form of proceeding under it, I have given below.

" Ld. ELDON, C. In attending to this case one or two circumstances presented themselves, which rendered it proper to postpone proceeding to judgment upon it, for a few days. In looking at *Hankin* v. *Broomhead*, it appeared that Lord *Alvanley* (in justice to whose memory he must say that he never in his life knew a more attentive and diligent judicial character) lamented that the Court had never been moved to settle the proper mode, of entering up judgment on the statute, in cases of this nature. The present judgment had not, except in form, received the authority of a court of justice, and he must say that this House had not been properly treated, when, instead of having the case argued below, all the Courts had been passed over, except as to form, and the record brought there in a manner which made it be *considered as having* been brought merely for delay; without any suggestion which could lead their Lordships to call for the usual assistance, in a case which it was most fitting to have discussed in the presence of all the Judges. This mode of proceeding left them without the benefit of that assistance in the regular way, which, however, in the exercise of a cautious and diligent inquiry, with respect to a question which had not before received a judicial decision, they ought to procure in some way, and he charged himself with that duty. In the mean time he begged he might be understood as giving no opinion ; and, indeed, on a point which had so much distressed the profession, he could not trust himself so far as to rest satisfied with any opinion which he himself might have formed. He stated this much the rather because the question had not been argued below, and the writ of error had been considered as having been brought merely for delay, and the cause had, therefore, been taken out of its course. If its nature had been understood, he might have thought it right that farther time should be allowed for preparation, before argument, though that would have been unnecessary, as the case had been very ably argued on both sides.

" The statute (8, 9, *Gul.* 3, *ch.* 11) had been passed for this reason : Before that statute, where there was a bond for performance of covenants, with a penalty, for instance, of 50,000*l.* in case of a breach, and action brought, the plaintiff had judgment for the whole sum, though the actual damage might be a mere trifle, or, at least, far short of the whole penalty, and defendant was obliged to go for relief to a Court of Equity, which, by directing an issue, &c. ascertained the real damage ; and in this expensive and circuitous mode justice was done. The object of the legislature was to relieve defendant from the necessity of resorting to this course, by em-

powering the court of law to confine the legal to the real right; and it was remarkable, after the passing of all these statutes, how far the words had fallen short of the construction which the Courts had put upon them. The remedy then devised by the statute was this, " that in all actions which, &c. shall be commenced or prosecuted in any of H. M. Courts of Record, upon any bond or bonds, or on any penal sum for non-performance of any covenants or agreements, in any indenture, deed or writing contained, the plaintiff or plaintiffs *may* assign as many breaches, [meaning in the declaration] as he or they shall think fit ; and the jury, upon trial of such action or actions, shall and may assess, not only such damages and costs of suit as have heretofore been usually done in such cases, but also damages for such of the said breaches so to be assigned, [meaning in the declaration] as the plaintiff, upon trial of the issues shall prove to have been broken, and that the like judgment shall be entered on such verdict, as heretofore hath been usually done in such like actions " So far the statute related strictly to cases where breaches were to be assigned in the declaration: It then went on to cases where judgment was given without breaches previously assigned. " And if judgment shall be given for plaintiff, on a demurrer, or by confession, or *nihil dicit*, the plaintiff upon the roll *may* suggest as many breaches of the covenants, &c. as he shall think fit, upon which shall issue a writ to the Sheriff of that county where the action shall be brought, to summon a jury to appear before the Justice or Justices of Assize or *Nisi Prius* of that county, to inquire of the truth of every one of those breaches, and to assess the damages that the plaintiff shall have sustained thereby, &c. &c." In the obvious construction the remedy was by suggesting on the roll these breaches, and the subsequent part was so modified, that the judgment or the whole sum stood as a security for the damages, costs, and charges, together with such farther damages as might be sustained by future breaches, plaintiff suggesting such breaches, again going to a jury, and so from time to time satisfying himself. But the Courts had construed this statute so as to extend the remedy to cases not strictly within the words, and the case of *Ethersay* v. *Jackson* went a great way to that purpose. That was an action of debt, on bond for performance of covenants Plea, *non est factum*, and issue thereupon, and notice of trial given. Plaintiff then entered a suggestion on the roll, and assigned breaches under the statute, and had a verdict—motion to set aside for irregularity, because the suggestion on the roll, in this case, was not warranted by the statute ; for it gave liberty to suggest only after judgment, and even that only in three cases—in judgments on demurrer, confession, or *nihil dicit.* The Court said there was no foundation for this objection—that statute required a liberal and beneficial construction, it being made in advancement of justice and ease of defendants—that it was manifest the legislature contemplated cases where plaintiff had not originally assigned breaches in the declaration, which statute enabled him to supply by suggestion on the record even after judgment, and *a fortiori* before. He was bound to suppose that this was just, and yet where a statute gave power to assign breaches in the declaration, and to suggest them on the roll after judgment, an ordinary man would say, that it was not hastily to be inferred

UTICA,
Aug. 1824.

Rogers
v.
Coleman.

that it sanctioned a third mode. But it had been properly said, that this was a remedial statute, and that, in advancement of the remedy, all was to be done that could be done in a way consistent with any construction of it. This showed how anxious the Courts were to extend the remedy to cases where it was wanted. When that case occurred where it was thought that the mode of entering up two judgments was wrong, Ld. *Alvanley*, (*Hankin* v. *Broomhead*, 3 *B*. & *P*. 607) adverted to a form, of which this was nearly a transcript, which had been suggested by Mr. Serjt *Williams*, (1 *Saund*. 58, *n*. 1) to which he (Ld. *A*.) said he saw no objection. So far there was authority that this judgment was good, attending to what had been said by Serjt *Williams*, in his *note* (2) in 2 *Saund* 187, and though one who had held no judicial situation could not regularly be mentioned as an authority, yet he might say, that to any one in a judicial situation it would be sufficiently flattering to have it said of him that he was as good a common lawyer as Mr. Serjt. *Williams*, for no man ever lived to whom the character of a great common lawyer more properly applied. There was, however, no judicial decision on the point. Ld. *Alvanley* had expressed his wish that the Courts had been moved to settle the proper mode of entering up judgment in such cases ; and he should be sorry to part with the present case without having it settled, not only as a correct judgment for the present, but as a precedent for the future ; and he should, therefore, use the means in his power to ascertain whether that opinion was sound, which he himself had formed, but which he would not now state."

" *Nov.* 30, 1814. Ld. ELDON, C. This was an action of debt, on bond, with penalty conditioned for the quiet enjoyment of certain purchased premises, and breaches were assigned in the replication, to which defendant below demurred, and after joinder in demurrer, no counsel appearing to argue the case for defendant, plaintiff had judgment, which was in the following form : [*He read it from the record.*]

" It would be observed that there was here a regular continuance from Hilary to Easter. There was no continuance from Easter to Trinity, but a day was given in M. T. so that the continuance might be said to be from Easter to Michaelmas Term. Then error was brought in the Exchequer Chamber ; but there was no argument, nor any suggestion as to what was the error in the judgment. The matter then came to that House, where it was the clear right of the subject to bring a case in this way, and, if there was error, to call upon their Lordships so to declare.

" A few words as to the chief point to which he had before adverted. The simplicity of the common law restricted parties to one judgment in the same cause ; but this simplicity had been made to give way by several acts of parliament, such as enclosure acts, &c. and under these acts there might, in the same cause, be a variety of judgments. Their Lordships were aware that, where there were covenants, with a bond and penalty for performance, if any one of them was broken, the whole penalty was gone, though the real damage in consequence of the breach might be but small in comparison. The subject was, therefore, obliged to go to a Court of Equity, which, by directing an issue of *quantum damnificatus*, &c. ascertained the real amount of the damage ; and, on payment of the damages and costs of

UTICA,
Aug. 1824.

Rogers
v.
Coleman.

the proceedings, the party was relieved, the penalty standing as a security for damages that might accrue by any future breaches, and leave being given to apply to the Court *de tempore in tempus* for similar issues. In the time of King *William* it was thought proper to relieve defendant by giving the courts of law an equitable jurisdiction ; and plaintiff, upon action on bond and judgment for the whole penalty, might suggest different breaches on the roll, and then pray that the real amount of the damage suffered might be inquired of by a jury, and the Court was to find means to award execution ‧ and, in case of future breaches, plaintiff might apply for interlocutory judgments, and future inquiries, *de tempore in tempus.* And the Court, in furtherance of the object of the act, construed *may* as compulsory on the plaintiff to proceed in this way. The form, then, by this mode, was, after judgment apparently final, to suggest breaches on the roll, as they occurred, and so to have judgment after judgment from time to time. This was felt to be attended with difficulties ; and the late Mr. Serjt. *Williams*, an eminent pleader, not merely from his acquaintance with the forms, but because there was no man whose mind was more richly stored with the principles of pleading, suggested a form, of which this was nearly a transcript. But errors having been suggested here for the first time after passing the Courts below, there was one point with respect to which, as it had not been found to have been decided before, and as this would be a precedent for the future, he had thought it right, though he had formed an opinion, privately to consult those whose assistance was most material under these circumstances. The objection was of this nature, that the law required the parties to be constantly in Court, that when it was stated on the record that the Court was not prepared to give judgment on any particular term, the parties should be ordered to attend on a given day in the next term, and so on from term to term. In this way the cause had been continued from H. T. to E. T., and then an interlocutory judgment was given to the extent, that it appeared to the Court that plaintiff below ought to recover his debt. But then the record went on, " because it is convenient and necessary that judgment should not be given hereupon, until the truth of the aforesaid breaches, &c. shall have been inquired into, &c." giving a day to the parties not in T. T. but in M. T., directing an inquiry, in the mean time, before the Judges of Assize, which, from the ordinary mode of holding the Assizes, could only be executed subsequent to T. T. It was said, however, that the reason for the ordinary continuance ceasing, there was no occasion for it in this instance, and that the question was, not what was necessary by the common law, but whether the record was sufficient to satisfy the enactments of the statutes. And it had been said, on the other hand, that there might, by possibility, be no Assizes before Michaelmas. True ; but a day was given in that term. and there might be a farther continuance Attending, then, to the reason of the common law and the object of the statutes, it was clear that this record was sufficient and right, as providing, in every respect, for the due execution of the statute ; and the point for their Lordships' consideration was, whether there was error with reference to the due execution of the statute. The common law said there must be only one judgment, but in the due execution of cer-

tain statutes there must be several judgments ; and if this record satisfied the statute, it appeared to him to be sufficient     *Salk.* 700.  2 *Ld. Raym.* 775 )  The *ca. sa.* need not be made returnable the term after it issued, the object being to give time for payment of the debt, &c. and the reason therefore ceasing.  It was otherwise, he believed, on *mesne process;* but this showed that the reason of the thing was to be considered, and they would apply the common law reason as far as it enabled them to go in due execution of the statute.  That was his view of the case, and having waited to see whether others, whose minds were more enlightened on the subject than his own. concurred with him, he was now prepared to r. commend to their Lordships to decide that there was no error on this record."